PROSKAUER ROSE LLP
Bettina B. Plevan
Joseph C. O'Keefe
1585 Broadway
New York, New York 10036
(212) 736-8185
bplevan@proskauer.com
jokeefe@proskauer.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
EQUAL EMPLOYMENT OPPORTUNITY :
COMMISSION,                                          :
                                                    :
              Plaintiff,                            :        10-CIV-0655 (LTS)
                                                    :
              v.                                    :        **ECF CASE**
                                                    :
KELLEY DRYE & WARREN LLP,                           :
                                                    :
                                                    :
              Defendant.                            :
                                                    :
-----------------------------------------------------x


**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................................ii

PRELIMINARY STATEMENT .............................................................................1

FACTS ....................................................................................................................2

ARGUMENT ...........................................................................................................5

I.    THE EEOC HAS FAILED TO ESTABLISH THAT IT IS IMMUNE
      FROM ANY AFFIRMATIVE DEFENSE, OR THAT IT WILL SUFFER
      PREJUDICE IF THE DEFENSES REMAIN ......................................................5

      A.    Disputed Legal Issues Cannot be Resolved by a 12(f) Motion.................7
      B.    The EEOC Has Failed to Establish the Required Prejudice. ......................8

II.   ACTING IN ITS REPRESENTATIVE CAPACITY, THE EEOC'S
      CLAIMS ARE LIMITED BY THE ACTIONS, INACTIONS AND
      WISHES OF THE INDIVIDUALS ...................................................................10

III.  THE EEOC'S CLAIMS AND/OR ITS RIGHT TO RECOVER
      INDIVIDUAL SPECIFIC RELIEF IS SUBJECT TO THE APPLICABLE
      STATUTE OF LIMITATIONS.........................................................................13

IV.   THE CHARGE FILED BY AN INDIVIDUAL AND THE FAILURE TO
      SATISFY ADMINISTRATIVE PREREQUISITES ARE
      APPROPRIATELY CONSIDERED IN ASSESSING AN INDIVIDUAL'S
      ENTITLEMENT TO RELIEF...........................................................................17

V.    THE EEOC HAS FAILED TO DEMONSTRATE THAT THE
      EQUITABLE DEFENSES ARE UNAVAILABLE AGAINST THE EEOC
      AS A MATTER OF LAW ................................................................................18

      A.    Waiver.......................................................................................................20
      B.    Laches.......................................................................................................20
      C.    Estoppel ....................................................................................................21
      D.    Unclean Hands ..........................................................................................22

VI.   THE ALLEGATIONS IN THE FIFTEENTH AFFIRMATIVE DEFENSE
      ARE RELEVANT AND MATERIAL TO THE CLAIMS AND
      DEFENSES ASSERTED ..................................................................................22

VII.  AFFIRMATIVE DEFENSES 16, 17 AND 18 REGARDING DAMAGES
      SHOULD NOT BE STRICKEN .......................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*ABF Freight System, Inc. v. NLRB*,
    510 U.S. 317 (1994) ................................................................................ 22

*Adams v. County of Erie, Pa.*,
    No. 1:07-CV-316, 2009 WL 4016636 (W.D. Pa. Nov. 19, 2009) ......................................... 9

*B.W.P. Distribs., Inc. v. OE Plus, Ltd.*,
    No. 07 Civ. 9588, 2009 WL 1154102 (S.D.N.Y. Mar. 31, 2009)(Karas, J.) .......................... 9

*BMW of N. Am. v. Gore*,
    517 U.S. 559 (1996) ................................................................................ 25

*Canadian St. Regis Band of Mohawk Indians v. New York*,
    278 F. Supp. 2d 313 (N.D.N.Y. 2003) ................................................................. 7

*County Vanlines Inc. v. Experian Info. Solutions, Inc.*,
    205 F.R.D. 148 (S.D.N.Y. 2002)(Conner, J.) ................................................... 7, 8

*Durham Indus., Inc. v. North River Ins. Co.*,
    482 F. Supp. 910 (S.D.N.Y. 1979)(Sweet, J.) ...................................................... 5

*EEOC v. AT&T Co.*,
    36 F. Supp. 2d 994 (S.D. Ohio 1998) .............................................................. 15

*EEOC v. Ford Motor Co.*,
    529 F. Supp. 643 (D. Colo. 1982),
    *aff'd*, 732 F.2d 120 (10th Cir. 1984) ............................................................. 6

*EEOC v. Goodyear Aerospace Corp.*,
    813 F.2d 1539 (9th Cir. 1987) ................................................................ 12, 13

*EEOC v. Griffin Wheel Co.*
    511 F.2d 456 (5th Cir. 1975) ................................................................ 16, 17

*EEOC v. Inc. Vill. of Valley Stream*,
    535 F.Supp.2d 323 (E.D.N.Y. 2008) ............................................................... 16

*EEOC v. Johnson & Higgins, Inc.*,
    91 F. 3d 1529 (2d Cir. 1996) ..................................................................... 16

*EEOC v. McLean Trucking Co.*,
    525 F.2d 1007 (6th Cir. 1975) .................................................................... 13

*EEOC v. Poplar Springs Nursing Ctr.*,
No. 4:08CV112, 2009 WL 387335 (S.D. Miss. Feb. 13, 2009) ............................................ 6

*EEOC v. United States Steel Corp.*,
921 F.2d 489 (3d Cir. 1990) ..........................................................................................11, 12

*EEOC v. Venator Group*,
No. 99 Civ. 4758, 2002 WL 181709 (S.D.N.Y. Feb. 5, 2002)(Schwartz, J.) ........................ 15

*EEOC v. W.H. Braum, Inc.*,
347 F.3d 1192 (10th Cir. 2003) ........................................................................................ 12

*EEOC v. Waffle House, Inc.*.
534 U.S. 279 (2002) ......................................................................................................10, 11

*FDIC v. Gladstone*,
44 F. Supp. 2d 81 (D. Mass. 1999) ..................................................................................... 7

*Fleischer v. A. A. P., Inc.*,
180 F. Supp. 717 (S.D.N.Y. 1959) ..................................................................................... 22

*FTC v. Medicor LLC*,
No. 01 Civ. 1896, 2001 WL 765628 (C.D. Cal. June 26, 2001) ........................................... 7

*Gleason v. Chain Serv. Rest.*,
300 F. Supp. 1241 (S.D.N.Y. 1969),
*aff'd*, 422 F.2d 342 (2d Cir. 1970) ..................................................................................... 22

*Goico v. Boeing Co.*,
347 F. Supp. 2d 986 (D. Kan. 2004) .................................................................................. 25

*Green v. City & County of San Francisco Ca.*
No. C 06-6953, 2007 WL 521240 (N.D. Cal. Feb. 15, 2007) ................................................ 6

*Hamilton v. Atlas Turner, Inc.*,
197 F.3d 58 (2d Cir. 1999),
*cert. denied*, 530 U.S. 1244 (2000) .................................................................................... 20

*Hoffmann La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989) ......................................................................................................... 16

*Johnston v. Davis Sec., Inc.*,
217 F. Supp. 2d 1224 (D. Utah 2002).................................................................................. 25

*Kosakow v. New Rochelle Radiology Assoc., P.C.*,
274 F.3d 706 (2d Cir. 2001)................................................................................................ 21

iii

*Lauder v. First UNUM Life Ins. Co.*,
    284 F.3d 375 (2d Cir. 2002) ........................................................................... 20

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976) ........................................................................... 22

*Lorillard Div. of Loew's Theatres, Inc. v. Pons*,
    434 U.S. 575 (1978) ....................................................................................... 16

*Loubier v. Allstate Ins. Co.*,
    No. 3:09CV261, 2010 WL 1279082 (D.Conn. Mar. 30, 2010) ............................................ 8

*Martin v. Nationsbank of Georgia, N.A.*
    No. 92 Civ. 1474, 1993 WL 345606 (N.D. Ga. Apr. 6, 1993)............................................ 18

*McConnell v. Thomson Newspapers*,
    802 F. Supp. 1484 (E.D. Tex. 1992)............................................................13, 15

*McKennon v. Nashville Banner Publ. Co.*,
    513 U.S. 352 (1995) ....................................................................................... 15

*Moskowitz v. Trustees of Purdue Univ.*,
    5 F.3d 279 (7th Cir. 1993)............................................................................... 24

*Mutual Pharm. Co. v. Watson Pharm.*, Inc.,
    No. 09-5421, 2010 WL 446132 (D.N.J. Feb. 8, 2010) ......................................................... 9

*Occidental Life Ins. Co. v. EEOC*,
    432 U.S. 355 (1977) ...................................................................................18, 19

*Preston v. Am. Fed'n of Television & Radio Artists*,
    No. 90 civ 7094, 2002 WL 1009458 (S.D.N.Y. May 16, 2002) ...................................20, 21

*Providence Town Ctr. LP v. Raymours Furniture Co.*,
    No. 09-3902, 2009 WL 3821935 (E.D. Pa. Nov. 13, 2009) .............................................9, 10

*RTC v. Gregor*,
    No. 94 Civ. 2578, 1995 WL 931093 (E.D.N.Y. Sept. 29, 1995) ......................................... 7, 8

*Salcer v. Envicon Equities Corp.*,
    744 F.2d 935 (2d Cir. 1984),
    *vacated on other grounds*, 478 U.S. 1015 (1986) ........................................................*passim*

*SEC v. Downe*,
    No. 92 Civ. 4092, 1994 WL 67826 (S.D.N.Y. Mar. 3, 1994)(Leisure, J.) .............................. 7

*SEC v. Lorin*,
    869 F. Supp. 1117 (S.D.N.Y. 1994)(Baer, J.) ....................................................... 6

*SEC v. Packetport.com*,
No. 05 Civ. 1747, 2006 WL 2798804 (D. Conn. Sept. 27, 2006)......................................... 7, 8

*SEC v. Sands*,
902 F. Supp. 1149 (C.D. Cal. 1995),
*aff'd sub nom*, *SEC v. First Pac. Bancorp.*, 142 F.3d 1186 (9th Cir. 1998)......................... 18

*Setzler v. City & County of San Francisco*,
No. C 07-05792, 2008 WL 2264481 (N.D. Cal. June 2, 2008) ............................................. 9

*Snapp v. Unlimited Concepts, Inc.*,
208 F.3d 928 (11th Cir. 2000)........................................................................................... 24

*Specialty Minerals, Inc. v. Pluess-Staufer AG*,
395 F. Supp. 2d 109 (S.D.N.Y. 2005)(Marrero, J.)........................................................... 6, 7

*Stone v. Williams*,
873 F.2d 620 (2d Cir.), *cert. denied*, 493 U.S. 959,
*vacated on other grounds*, 891 F.2d 401 (2d. Cir. 1989) ..................................................... 21

*Tomao v. Abbott Labs., Inc.*,
No. 04 C 3470, 2007 WL 2225905 (N.D. Ill. July 13, 2007) ............................................. 25

*United States v. Fairchild Indus., Inc.*,
766 F. Supp. 405 (D. Md. 1991) ........................................................................................ 7

*United States v. Walerko Tool & Eng'g Corp.*
784 F. Supp. 1385 (N.D. Ind. 1992) ................................................................................... 8

*Vines v. Univ. of La.*,
398 F.3d 700 (5th Cir. 2005),
*cert. denied*, 546 U.S. 1089 (2006) ...............................................................................11, 12

*Wimberly v. Clark Controller Co.*,
364 F.2d 225 (6th Cir. 1966)............................................................................................. 22

## STATUTES

Age Discrimination in Employment Act ("ADEA"),
29 U.S.C. §§ 621-634 (2009) ....................................................................................*passim*

Civil Rights Act of 1991,
42 U.S.C. § 1981 (2009) ......................................................................................14, 15, 16

Fair Labor Standards Act ("FLSA"),
29 U.S.C. §§ 201, 216 (2009) ....................................................................................*passim*

Portal-to-Portal Act,
   29 U.S.C. § 255 (2009) .......................................................................................... 14, 15, 16


**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(f) ........................................................................................................*passim*

H.R. Rep. No. 102-40, pt. 2, at 40-41 (1991) ............................................................ 15

H.R. Rep. No. 102-459, pt. 1, at 24 (1991)............................................................... 15

## PRELIMINARY STATEMENT

The motion by the Equal Employment Opportunity Commission ("EEOC") to strike nine Affirmative Defenses is a premature and unfounded attempt to foreclose a full and fair debate on the validity of its assertion that it is acting in the public interest and that it has the right to assert a claim on behalf of a law firm partner who agreed as part of his partnership to become a Life Partner on a fixed income, at age 70. The Affirmative Defenses asserted by Kelley Drye & Warren LLP ("Kelley Drye" or the "Firm") are all well-founded in fact and law and should not be stricken now, or ever.

The EEOC argues primarily that the asserted defenses, while applicable in cases involving individual rights, do not apply in EEOC actions allegedly commenced in the public interest. Whether this case is brought in the public interest, as distinguished from the interests of Mr. D'Ablemont, remains, at the very least, an open question. Significantly, the EEOC purports to challenge a policy – mandatory transition of Kelley Drye Partners to Life Partner status – that has been voluntarily eliminated by the Firm. The other Life Partners the EEOC purports to represent rejected the EEOC's invitation to participate in this action. The claims of the sole charging party, D'Ablemont, are the only claims at issue. The Firm should be permitted to assert all defenses that could otherwise apply to his claims to avoid inequities and to give full effect to the Partnership compact D'Ablemont entered into. D'Ablemont's actions and inactions demonstrate that he received and benefited from the entirety of that bargain he voluntarily entered when he became a Kelley Drye Partner, and that he is entitled to nothing more.

Courts have uniformly recognized that defendants should be afforded every opportunity to have their defenses considered on their merits. Motions to strike affirmative defenses therefore are strongly disfavored and routinely rejected. The EEOC ignores, and certainly has not satisfied, the

rigorous standard requiring that it demonstrate that there is no set of circumstances under which the defenses could prevail.  The EEOC has also failed to allege the requisite prejudice flowing from inclusion of the Affirmative Defenses or to establish immunity from any of them.  The EEOC's motion should therefore be denied.

## FACTS

Kelley Drye is a New York Limited Liability Partnership that operates pursuant to the terms of a Partnership Agreement. (Preliminary Pre-Trial Statement ("PPS"), §c1, p. 3). D'Ablemont began working at the Firm in 1959 and became a Kelley Drye Partner in 1969. (PPS, §§c3-5, p. 3). All Kelley Drye Partners, including D'Ablemont, are parties to and have ratified all of the provisions of the Partnership Agreement. (PPS, §g1, p. 12).  At all times since 1969, D'Ablemont has enjoyed all of the benefits of being a member of the Kelley Drye Partnership.

D'Ablemont was a Partner when, in 1973, the Partners amended the Partnership Agreement to add a new provision, designed to benefit all Partners, which provided that a Partner would begin transitioning to Life Partner status upon his/her 65th birthday. (PPS, §g2, p. 12). D'Ablemont and all of his then Partners participated in discussions concerning that provision and each had an opportunity to review, consider, and register their vote on the provision prior to its adoption. (PPS, §g5, p. 13)

According to a memorandum written by D'Ablemont (on August 23, 1996), the transition concept established by the Life Partner provision of the Partnership Agreement was:

> a negotiated deal: the Firm would grant partners, in essence, a lifetime pension in recognition of their long service to the Firm and, in exchange, the partners would agree to give up their points over a four year period of time, pursuant to an automatic formula, and assist in passing on Firm clients to younger partners.

(PPS, §g6, p. 13).  Consistent with the thoughts he expressed in that memorandum, D'Ablemont has affirmatively stated his belief that Life Partners should not be compensated in the same

manner and amounts as other Partners.  While a Life Partner, D'Ablemont stated in a December

14, 2000 memorandum to the Chairman and Managing Partner of the Firm that:

> I appreciate that the Executive Committee ought not to assume the role of a 'Points
> Committee' for Life Partners. I am not suggesting that productive Life Partners be
> compensated on the basis of measuring economic and other contributions to the
> Firm comparable to what is done for equity and stipulated payment partners.

(PPS, §g20, p. 15).  In a March 2001 memorandum to the Chairman and Managing Partner of the

Firm D'Ablemont commented:

> I am not asking that I be evaluated and rewarded on some sort of points analysis
> basis or on the same basis as [another named partner], I am asking that I be
> rewarded with a bonus ('honorarium' to use John's word) consistent with what the
> Firm has done in the past for productive life partners.

(PPS, §g21, p. 15). Three years later, on October 19, 2004, D'Ablemont authored a similar

memorandum to the Chairman of the Firm that reiterated his belief that compensation of Life

Partners should "not [be] for the same amount of money," as received by active Partners who are

not Life Partners. (PPS, §g22, p. 15).

D'Ablemont began his transition to Life Partner more than 15 years ago, in 1995, and he

became a Life Partner effective January 1, 2000. (PPS, §c6, p. 3).  Shortly after D'Ablemont

became a Life Partner, he directed the Firm's Executive Director to transfer to other Partners

billing credit for all of his matters and billing responsibility for most of his matters. (PPS, §g7, p.

13).  After he became a Life Partner, he continued to practice in a limited way, apparently because

he wanted to, not because he was asked or expected to.  During the last five years D'Ablemont's

annual billable hours have ranged from 195.4 to 324.2 hours, which is an average of 7 to 10 times

less than the hours he billed prior to becoming a Life Partner. (PPS, §g9, p. 14). From his own

words it is clear that he also had no expectation of payment for his efforts, except perhaps an

"honorarium".

D'Ablemont has enjoyed all of the significant benefits associated with Life Partner status

and more.[1]  On an annual basis since 2000 D'Ablemont has received a substantial Annual Life

Partner Payment.  He will continue to receive that payment without regard to whether he performs

any services for Kelley Drye whatsoever. (PPS, §c7, p. 3).  In addition, D'Ablemont has been

granted a client development allowance of as much as $25,000, an amount that greatly exceeds

what is provided under the formula used for other Partners. (PPS, §g10-11, p. 14).  He has been

permitted to utilize the client development account for significant expenses he has submitted as

business related. These expenses include country club dues, travel, entertainment, and charitable

contributions.  D'Ablemont is provided with office space, all necessary office equipment, full time

secretarial support and other clerical and administrative support that he may request. (PPS, §g11,

p. 14).  D'Ablemont has utilized Firm resources to provide legal services to members of his

family, for which the Firm has not received payment, including fees and charges exceeding

$160,000 for handling a lawsuit on behalf of his son, and fees and charges exceeding $18,000 for

handling a patent matter for his son-in-law. (PPS, §g11, p. 14).  Unlike most other Life Partners,

D'Ablemont has also received a bonus every year since he became a Life Partner of as much as

$75,000 (reduced in recent years to $25,000 for economic reasons). (PPS, §c9, p. 4; g23, p. 16)

The Firm's actions with regard to D'Ablemont have at all times been fair and consistent

with the terms of the Partnership Agreement.  However, D'Ablemont has a history of

objectionable behavior inconsistent with the expectations for a Kelley Drye Partner.  In addition,

in February 2000, D'Ablemont was told that he could either receive a direct monetary retainer

from a certain Firm client or be eligible to be considered by the Firm's Executive Committee for

an annual bonus, but he could not have both.  Notwithstanding this directive, for many years

thereafter, D'Ablemont solicited and received an annual bonus from the Firm, without notifying

---

[1] D'Ablemont rejected the Firm's offer to relinquish Life Partner status and become a regular
Partner.

the Firm's Executive Committee that he was also receiving one or more third party retainers each year. (PPS, §g15, p. 14-15).  D'Ablemont has failed and refused to answer the Firm's questions as to the precise services provided to, and amounts received from, third parties. (PPS, §g25 , p. 16)

In March 2010 the Firm amended the Partnership Agreement to eliminate the provisions requiring conversion to Life Partner status at age 70. In connection therewith all Life Partners who had mandatorily become Life Partners at age 70 were given the opportunity to become a Partner subject to the Firm's Earnings Allocation Committee, but relinquish their rights as Life Partners. (PPS, §g27, p. 16).  None, including Mr. D'Ablemont, has chosen to relinquish Life Partner status and become a Partner subject to the Firm's Earnings Allocation Committee.  In February 2010, the EEOC sent a letter to each Kelley Drye Life Partner who had mandatorily become a Life Partner at age 70, asking the Life Partner if he was interested in participating as a claimant in this case. No Life Partner, other than D'Ablemont, has elected to participate in this lawsuit as a claimant. (PPS, §g28, p. 16-17).  No Partner, other than D'Ablemont, has ever asserted a claim of discrimination against the Firm. (PPS, §g17, p. 15).  As a consequence, this suit is focused entirely on the claim for damages on behalf of D'Ablemont.

## ARGUMENT

### I.
### THE EEOC HAS FAILED TO ESTABLISH THAT IT IS IMMUNE FROM ANY AFFIRMATIVE DEFENSE, OR THAT IT WILL SUFFER PREJUDICE IF THE DEFENSES REMAIN

Courts have uniformly concluded that motions to strike an affirmative defense under Rule 12(f) are not favored and will not be granted unless "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Durham Indus., Inc. v. North River Ins. Co.*, 482 F. Supp. 910, 913 (S.D.N.Y. 1979)(Sweet, J.)(internal citations omitted)(emphasis added). *See also Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939

(2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986); *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005)(Marrero, J.), *SEC v. Lorin*, 869 F. Supp. 1117, 1120 (S.D.N.Y. 1994)(Baer, J.).

Significantly, even where the facts are not in dispute (and there are numerous factual disputes here), courts have noted that a "motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law." *Salcer*, 744 F.2d at 939 (internal citations omitted). This is particularly so where, as here, there has been no discovery. *Id.* at 939. *See also Green v. City & County of San Francisco Ca.*, No. C 06-6953, 2007 WL 521240, at *2 (N.D. Cal. February 15, 2007) (court refused to strike defense of unclean hands at early stage of the proceedings). As the Court of Appeals has explained:

> [E]ven when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits...To do otherwise would be to run the risk of offering an advisory opinion on an abstract and hypothetical set of facts."

*Salcer*, 744 F. 2d at 939. (emphasis added).

This strong presumption disfavoring motions to strike applies even where the plaintiff is the Government, as evidenced by the cases denying EEOC motions to strike some of the same affirmative defenses asserted by Kelley Drye here. *See, e.g.*, *EEOC v. Poplar Springs Nursing Ctr.*, No. 4:08CV112, 2009 WL 387335, at *1 (S.D. Miss. Feb. 13, 2009)(denying EEOC's motion to strike all but one of defendant's 31 affirmative defenses because the EEOC did "not articulate any real prejudice which will result if the disputed defenses are not stricken. . ."); *EEOC v. Ford Motor Co.*, 529 F. Supp. 643 (D. Colo. 1982)(denying EEOC's motion to strike *inter alia* waiver, estoppel, acquiescence, accord and satisfaction and failure to mitigate defenses), *aff'd*, 732 F.2d 120 (10th Cir. 1984).

Numerous Courts have been similarly hostile to Rule 12(f) motions filed by other

governmental entities. *See, e.g. SEC v. Packetport.com*, No. 3:05-CV-1747, 2006 WL 2798804 (D. Conn. Sept. 27, 2006) (denying SEC's motion to strike affirmative defenses of estoppel and waiver); *FTC v. Medicor LLC*, No. CV011896, 2001 WL 765628 (C.D. Cal. June 26, 2001) (denying FTC's motion to strike affirmative defense of unclean hands); *RTC v. Gregor*, No. 94 Civ. 2578, 1995 WL 931093 (E.D.N.Y. Sept. 29, 1995) (denying RTC's motion to strike affirmative defenses of estoppel, waiver, and laches); *SEC v. Downe*, No. 92 Civ. 4092, 1994 WL 67826, at *2 (S.D.N.Y. Mar. 3, 1994)(Leisure, J.)(denying SEC's motion to strike affirmative defense of estoppel); *United States v. Fairchild Indus., Inc.*, 766 F. Supp. 405 (D. Md. 1991) (denying U.S.'s motion to strike affirmative defenses of unclean hands, waiver, and estoppel); *FDIC v. Gladstone*,  44 F. Supp. 2d 81, 90 (D. Mass. 1999) (denying motion to strike estoppel defense, reasoning that "[b]ecause Defendants' ability to make use of an estoppel defense is a fact intensive question, it would be inappropriate to strike the defense").

The proponent of a Rule 12(f) motion has a heavy burden.  Courts in this Circuit will deny motions to strike unless the plaintiff can satisfy the court that: (i) there is no substantial question of law that might allow the defense to succeed; (ii) there is no question of fact that might allow the defense to succeed; <u>and</u> (iii) the plaintiffs will be (unjustly) prejudiced by the inclusion of the defense. *See*, *e.g.*, *Salcer*, 744 F.2d at 939; *Specialty Minerals, Inc.,* 395 F. Supp. at 111-12; *County Vanlines Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 152-53 (S.D.N.Y. 2002)(Conner, J.).  The burden to satisfy these elements rests with the moving party, here the EEOC.  *Canadian St. Regis Band of Mohawk Indians v. New York*, 278 F. Supp. 2d 313, 325 (N.D.N.Y. 2003).  In order to defeat the EEOC's motion, Kelley Drye is not required to do anything to prove its defenses.  The EEOC has not met, and cannot meet, its burden.

### A.    Disputed Legal Issues Cannot be Resolved by a 12(f) Motion.

The EEOC's motion is a futile attack on the legal sufficiency of Kelley Drye's Affirmative

Defenses.  The EEOC has failed to meet its burden of establishing "immunity from the defense as a matter of law."  *Packetport.com*, 2006 WL 2798804, at *2-3 (denying motion to strike waiver defense on grounds that plaintiff had not demonstrated that defense was precluded as a matter of law); *County Vanlines Inc.*, 205 F.R.D. at 153 ("Even if it is unlikely that defendant could prove a sufficient set of facts to prevail on its defense, when the possibility of a meritorious defense exists, the Court must…deny the motion to strike the affirmative defense") (quotation and internal citation omitted); *United States v. Walerko Tool & Eng'g Corp.*, 784 F. Supp. 1385, 1388-89 (N.D. Ind. 1992) (refusing to strike affirmative defenses of estoppel and waiver in government action where "[a]nalysis of applicable precedent shows that while [defendant's] asserted defenses seldom are applicable against the government, the defenses are not foreclosed as a matter of law").

<u>Any</u> conflict in the state of the law with respect to the claimed immunity requires a court to deny the motion under Rule 12(f).  *See*, *e.g.*, *Salcer*, 744 F.2d at 939 (motions to strike do not present vehicles to decide issues of law that are not settled and over which courts have disagreed); *Gregor*, 1995 WL 931093, at *4 ("[b]ecause of the uncertainty of the authority, the viability of laches and estoppel/waiver defenses in this context is an open and disputed question of law that the Court declines to decide on this motion [to strike]").

### B.    The EEOC Has Failed to Establish the Required Prejudice.

The EEOC must do more than prove immunity from each challenged defense.  It must also prove prejudice.  The absence of prejudice is fatal to a motion to strike.  *Loubier v. Allstate Ins. Co.*, No. 3:09CV261, 2010 WL 1279082, at *7 (D.Conn. Mar. 30, 2010)("Having failed to argue or show that prejudice would result from inclusion of the paragraphs it seeks to strike, Allstate's motion will be denied); *County Vanlines Inc.*, 205 F.R.D. at 153; *Gregor*, 1995 WL 931093, at *5.

The EEOC does not come close to showing the required prejudice from the inclusion of the Affirmative Defenses.  Its only reference to prejudice is a single, self-serving sentence:  "EEOC

would be prejudiced by expending its limited resource in dealing with discovery, post-discovery motions and trial of the irrelevant defenses." (EEOC Br., p. 3).  This unexplained and unsupported claim of prejudice provides no basis for striking any Affirmative Defense.

The EEOC's unfounded suggestion that it will be burdened by discovery unless the Affirmative Defenses are stricken is offered without explanation and is at best premature.  *See, e.g., B.W.P. Distribs., Inc. v. OE Plus, Ltd.*, No. 07 Civ. 9588, 2009 WL 1154102, at *11 (S.D.N.Y. Mar. 31, 2009)(Karas, J.)(denying motion to strike allegations in counterclaim "given the preliminary stage of the proceedings and the general nature of the allegations"); *Setzler v. City & County of San Francisco*, No. C 07-05792, 2008 WL 2264481, at *8 (N.D. Cal. June 2, 2008) ("[T]he Court believes the better approach is to make determinations about the scope of discovery as particular issues arise"); *Mutual Pharm. Co. v. Watson Pharm.*, Inc., No. 09-5421 2010, WL 446132, at *9 (D.N.J. Feb. 8, 2010).  This contention is also disingenuous because the EEOC made a conscious decision to expend taxpayer money on a suit where no injunctive relief can be obtained and where the only person with any interest in the outcome is D'Ablemont, who is fully capable of pursuing his claim on his own, without the expenditure of allegedly "limited" government resources.

The same is true for the EEOC's supposed fear of the multiplicity of motions and the length of a trial.  Indeed, it is the EEOC which is needlessly multiplying motions by making a meritless motion to strike.  The EEOC's remedy is not to strike the challenged defenses.  Rather, it can avoid any undue prejudice by motions made after discovery.  *See, e.g., Adams v. County of Erie, Pa.*, No. 1:07-CV-316, 2009 WL 4016636, at *1 (W.D. Pa. Nov. 19, 2009); *Providence Town Ctr. LP v. Raymours Furniture Co.*, No. 09-3902, 2009 WL 3821935, at *5 (E.D. Pa. Nov. 13, 2009) (denying motion to strike allegations in complaint, noting that such motions are

"disfavored" and proper approach would be for defendant to file a motion in limine).

As shown in detail below, the EEOC is neither immune from, nor prejudiced by, any of the Affirmative Defenses.  The Motion to Strike should, therefore, be denied.

## II.
## ACTING IN ITS REPRESENTATIVE CAPACITY, THE EEOC'S CLAIMS ARE LIMITED BY THE ACTIONS, INACTIONS AND WISHES OF THE INDIVIDUALS

Underlying the EEOC's challenge to five Affirmative Defenses is its untenable premise that it has unbridled independent authority to seek relief on behalf of individuals, unburdened by the contracts, agreements, rights, responsibilities, circumstances, actions and/or inactions of the individual(s) for whom it seeks monetary relief.  The EEOC goes even further, maintaining that its authority to act on behalf of individuals survives the individuals' explicit rejection of its invitation to participate in this action.  Whatever the EEOC's rights may be in other circumstances, in this case, contrary to its assertion of omnipotent authority, the EEOC is proceeding on behalf of a single individual with whom it is in privity.  Therefore, its suit for damages on behalf of that individual is subject to defenses (both as to liability and damages) based upon the actions, conduct, and statements of the individual involved.

Although the EEOC may generally bring claims and seek class wide relief on behalf of individuals who have not filed administrative charges, its assertion that it "files lawsuits in the public interest even though it seeks victim-specific relief; EEOC's right to sue is independent of any individual's rights," significantly overstates its authority.  Recent decisions, including the Supreme Court's decision in *EEOC v. Waffle House, Inc.*. 534 U.S. 279 (2002) make clear that when the EEOC pursues monetary relief on behalf of an individual or group of individuals, it acts in its representative capacity on behalf of those individuals and is subject to defenses based on the conduct, actions and inactions of those individuals to eliminate or limit the individual damages that can be recovered.

Although the Supreme Court concluded in *Waffle House* that the arbitration agreement did not bar the EEOC action entirely, the Court held that an individual's "conduct may have the effect of limiting the relief that the EEOC may obtain in court. If, for example, he had failed to mitigate his damages, or had accepted a monetary settlement, any recovery by the EEOC would be limited accordingly." *Waffle House, Inc.,* 534 U.S. at 296. Thus, while the EEOC might be free to pursue claims on behalf of an individual, the relief that can be recovered is ultimately dependent on the circumstances and conduct of that individual.

Cases since *Waffle House* require that courts examine the actions and inactions of individuals in determining the relief, if any, available to those individuals.  In *Vines v. Univ. of La.*, 398 F.3d 700 (5th Cir. 2005), *cert. denied*, 546 U.S. 1089 (2006), for example, the Fifth Circuit held that "[w]hen the EEOC seeks private benefits for individuals under the ADEA, it takes on representative responsibilities that place[] it in privity with those individuals."  *Id.* at 707 (emphasis added).  The Fifth Circuit concluded that the EEOC is "in privity with individuals for whom it seeks relief such that a lawsuit litigated by either the EEOC or the individual bars subsequent relitigation of the same claims or issues."  *Id.* at 708.  The individual plaintiffs in *Vines* could not proceed with their age discrimination claims because their allegations were the same as those litigated previously by the EEOC.  The Fifth Circuit acknowledged the Supreme Court's decision in *Waffle House* and concluded that it did not alter the law that "the ADEA gives the EEOC representative responsibilities when it seeks private benefits for an individual."  *Id.* at 708 (internal quotation marks and citation omitted).

In *Vines* the Fifth Circuit relied heavily on *EEOC v. United States Steel Corp.*, 921 F.2d 489 (3d Cir. 1990).  There, the Third Circuit, through then-Judge Alito, ruled that the ADEA gives the "EEOC representative responsibilities when it seeks private benefits for an individual and that

the doctrine of representative claim preclusion must therefore be applied." *Id*. at 495.  The Court considered and <u>rejected</u> the same argument that the EEOC asserts here, that it was not "in privity with the individuals on whose behalf it maintains ADEA actions, because Congress intended the Commission to protect 'a broader independent public interest different from that of an individual grievant.' " *Id*. at 496.  Instead, the Third Circuit held that the individuals who had previously sued their employers unsuccessfully were "precluded by *res judicata* from obtaining individual relief in a subsequent EEOC action based on the same claims."  *Id*. at 496-97.  The Third Circuit acknowledged that the EEOC "has the responsibility to protect a vital public interest that transcends the interests of any or all aggrieved individuals," but that when the EEOC "seeks individualized benefits under the ADEA for particular grievants, … the Commission functions to that extent as their representative." *Id* at 496.

Consistent with these decisions, the Tenth Circuit has also acknowledged, in a case arising under the ADA, that an individual's conduct may have the effect of precluding the EEOC from pursuing individual-specific relief.  *EEOC v. W.H. Braum, Inc.*, 347 F.3d 1192, 1201 (10th Cir. 2003)(recognizing that "[a]n aggrieved employee's conduct 'may have the effect of limiting the relief that the EEOC may obtain in court.'")(quoting *Waffle House*, 534 U.S. at 296).  Ultimately, the Tenth Circuit ruled that *res judicata* did not apply under the facts of that case.

Similarly, in *EEOC v. Goodyear Aerospace Corp.*, the Ninth Circuit held that an employee's settlement with his employer precluded the EEOC from seeking back pay on the employee's behalf. 813 F.2d 1539, 1542-43 (9th Cir. 1987). With respect to the EEOC's argument that a "back pay award advances the public interest in deterring the employer from illegal discrimination," the Court ruled that "the public interest in a back pay award is minimal" because "any recovery of back pay by the EEOC would go directly to [the employee] who has freely

12

contracted away her right to back pay." *Id.* at 1543.

Finally, in *EEOC v. McLean Trucking Co.*, the Sixth Circuit held that the conduct of an individual could limit the ability of the EEOC to recover on his behalf. 525 F.2d 1007, 1011 (6th Cir. 1975). The Court held that an individual's "compromise settlement" of his earlier private action barred the EEOC from "recover[ing] any 'private benefit', such as back pay," on his behalf. *Id.* at 1011.

Most of the Affirmative Defenses the EEOC seeks to strike assert grounds for precluding the award of relief based on the conduct or inactions of D'Ablemont (or other Life Partners). Based upon the precedent described above, this Court must ultimately consider the conduct of the individual(s) on whose behalf the EEOC is seeking damages. These cases demonstrate that the EEOC's assertion that it has unbridled authority to seek individual relief is meritless, and that all of their arguments for striking the Affirmative Defenses must be rejected.

## III.
## THE EEOC'S CLAIMS AND/OR ITS RIGHT TO RECOVER INDIVIDUAL SPECIFIC RELIEF IS SUBJECT TO THE APPLICABLE STATUTE OF LIMITATIONS

The EEOC attacks Kelley Drye's Fourth Affirmative Defense (claims are barred by the statute of limitations "and/or filing periods") by declaring that it is not subject to any statute of limitations when it decides to bring an ADEA action against a private party. As support for this proposition the EEOC cites three District Court cases and <u>no</u> appellate authority. At least one District Court has reached the opposite conclusion. *See McConnell v. Thomson Newspapers*, 802 F. Supp. 1484, 1499-1500 (E.D. Tex. 1992) (When the EEOC files civil action on behalf of individual to enforce ADEA, EEOC is "legal representative" within meaning of statute defining "person" subject to ADEA's limitations provision requiring that plaintiff bring suit within 90 days of notice of dismissal of administrative charge or of termination of administrative proceeding). The Second Circuit has instructed that motions to strike were "never intended to furnish an

opportunity for the determination of disputed and substantial questions of law." *Salcer,* 744 F.2d at 939.  Here the EEOC's motion should be denied because the legal issue presented by Kelley Drye's Fourth Affirmative Defense is both disputed, and substantial.

The EEOC contends that due to the passage of the Civil Rights Act of 1991, there is no statute of limitations for any action commenced by the EEOC under the ADEA and that it has an eternal and unlimited right to recover damages for any and all ADEA violations without regard to when the violation occurred. The EEOC essentially argues that any alleged discriminatory conduct, presumably beginning from the passage of the law, is forever subject to a claim for damages by the EEOC on behalf of individuals who failed to assert those claims in a timely manner.

It is undisputed that before 1991, the ADEA explicitly stated that <u>both</u> private actions and EEOC actions under the ADEA were subject to the time limitations applicable to claims under the Fair Labor Standards Act ("FLSA"), as provided in Section 6 of the Portal-to-Portal Act, 29 U.S.C. § 255.  Individuals and the EEOC were subject to a three year statute of limitations for alleged willful violations and a two year statute of limitations for other violations.  With the passage of the Civil Rights Act of 1991, Congress substantially shortened the ADEA limitations period with respect to the deadline for private individuals filing civil actions by eliminating the explicit reference to 29 U.S.C. § 255.  Following the amendment, the time for filing a charge remained the same (an individual must first file a charge within 300 days after the alleged unlawful practice, and then must wait a minimum of 60 days before commencing a civil action. *See* 29 U.S.C. § 626(d)).  Instead of an explicit reference to the FLSA two/three year limitations period for filing a lawsuit, the amendment adopted the Title VII procedure of requiring suit within (90) days following the receipt of a "right to sue" letter from the EEOC.

14

In the only case cited by the EEOC arising in this District, the Court simply held that the amendment imposing a 90 day filing deadline <u>applies only to individual plaintiffs who bring private suits and not to the EEOC</u>.  In *EEOC v. Venator Group*, No. 99 Civ. 4758, 2002 WL 181709 (S.D.N.Y. Feb. 5, 2002)(Schwartz, J.).  The court held that it made no sense to apply the 90 day period to the EEOC because "the Commission itself could control the operation of the statute simply by withholding the notice that triggers the running of the 90 days." *Id.* at *2. *See also EEOC v. AT& T Co.*, 36 F. Supp. 2d 994, 997 (S.D. Ohio 1998)(it was doubtful that Congress intended to place the EEOC in this "most anomalous" position of controlling the statute of limitations).  At least one District Court has reached the opposite conclusion and decided that that 90 day limitations period also applies to the EEOC.  *See McConnell*, 802 F. Supp. at 1499-1500. No Court of Appeals has decided the issue.

In any event, whether or not the 90 day limitations period applies to the EEOC, the pre-amendment (two year/three year) FLSA limitations scheme should still apply to the EEOC.[2]  The EEOC's enforcement authority derives from 29 U.S.C. § 626(b), which incorporates by reference the enforcement provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. *See McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 357 (1995) ("[The ADEA's] remedial

---

[2] The legislative history of the Civil Rights Act of 1991 supports the contention that Congress sought to amend the statute of limitations for private individuals and did not intend to eliminate the two year/three year limitations scheme with regard to the EEOC.  House Report No. 40 states that Congress sought to alleviate confusion among "persons" which resulted from the different time limitations under ADEA and Title VII.  The Report specifically notes that since the ADEA did not require the EEOC "to provide complainants with affirmative notice of their 'right to sue' upon the occurrence of certain events . . . many age discrimination victims lost their right to go to court, because they were unaware of the ADEA's time limitations for filing a lawsuit and they received no notice from the EEOC that they could-in fact, must-file suit by certain dates." The ADEA amendment was designed to eliminate that confusion and its consequences.  H.R. Rep. No. 102-40, pt. 2, at 40-41 (1991); *see also* H.R. Rep. No. 102-459, pt. 1, at 24 (1991)("Evidence in the last Congress indicated that the EEOC was not adequately enforcing the ADEA by allowing the statute of limitations to expire on thousands of age discrimination charges.")

provisions incorporate by reference the provisions of the Fair Labor Standards Act of 1938");

*Hoffmann La Roche, Inc. v. Sperling*, 493 U.S. 165, 167 (1989); *Lorillard Div. of Loew's*

*Theatres, Inc. v. Pons*, 434 U.S. 575, 582 (1978).

Since Congress favors short limitations periods for actions alleging violations of the

federal anti-discrimination laws, the EEOC should remain subject to the two/three year limitations

period under the FLSA, which is incorporated by reference in 29 U.S.C. § 626(b).  Indeed, the

ADEA expressly incorporates 29 U.S.C. § 216(c) (§ 16(c) of the FLSA), which in turn

incorporates by reference the two year statute of limitations (three years for willful violations)

contained in 29 U.S.C. § 255(a).  If Congress intended to free the EEOC from any statute of

limitations, it could have made clear in the Civil Rights Act of 1991 that the ADEA's continued

reliance on the FLSA enforcement scheme does not include the two year/three year statute of

limitations which is incorporated by reference in that enforcement scheme.  It did not.  These

provisions of the ADEA have never been amended or repealed by Congress and remain in full

force with respect to civil actions commenced by the EEOC. The Second Circuit expressly held in

*EEOC v. Johnson & Higgins, Inc.*, 91 F. 3d 1529, 1536-37 (2d Cir. 1996), that 29 U.S.C. § 216(c)

(Section 16(c) of the FLSA) authorizes the EEOC to bring independent actions.  Basic principles

of statutory construction and logic dictate that if the authority to bring an independent action is

derived from 29 U.S.C. § 216(c), then the statute of limitations incorporated by reference in that

section should be equally applicable. *But see, EEOC v. Inc. Vill. of Valley Stream,* 535 F.Supp.2d

323 (E.D.N.Y. 2008)(Rejecting argument that the FLSA  two year/three year time scheme  for

EEOC actions survived the Civil Rights Act of 1991.)[3]

---

[3] Even if the two/three year FLSA scheme no longer applies to EEOC enforcement actions, there
is authority for applying these time limitations to the EEOC when it seeks -- as it does here --
damages on behalf of a private individual.  *EEOC v. Griffin Wheel Co.* 511 F.2d 456 (5th Cir.

The EEOC also argues (in the alternative) that even if the FLSA statute of limitations applies, the Court should strike the Affirmative Defense on the basis that the alleged practices challenged constituted a "continuing violation" and, therefore, are the subject of a timely charge. The EEOC is improperly asking this Court to resolve disputed issues of fact to reach a decision on its Rule 12(f) motion. Significantly, the EEOC rests its argument on the false assertion that its allegation "that the compensation system at issue for attorneys over 70 years of age was ongoing and continuous since 'at least 2001'" is not disputed by Kelley Drye. (EEOC Br. at 5) In fact, in its Answer Kelley Drye denies the allegation. Kelley Drye not only disputes the allegation, but it also denies that any alleged "compensation system" ever existed. Whether the claims asserted on behalf of D'Ablemont are timely is an issue of fact which cannot be decided by a Rule 12(f) motion. The motion should therefore be denied.

## IV.
### THE CHARGE FILED BY AN INDIVIDUAL AND THE FAILURE TO SATISFY ADMINISTRATIVE PREREQUISITES ARE APPROPRIATELY CONSIDERED IN ASSESSING AN INDIVIDUAL'S ENTITLEMENT TO RELIEF

The EEOC seeks to strike the Ninth Affirmative Defense (claims contained in the Complaint are barred as to any matters not contained in the administrative charges of discrimination), Tenth Affirmative Defense (failure of the EEOC and D'Ablemont to satisfy the statutory and/or administrative prerequisites to the bringing of an action under the ADEA), and Eleventh Affirmative Defense (claims are barred, in whole or in part, because no administrative charges were filed relating thereto). This branch of the motion also rests upon the EEOC's flawed argument that its right to seek monetary relief is independent of any private individual's rights and not restricted by the conduct or inaction of the individual. As shown above, the EEOC's authority

---

1975). (When the EEOC acts on behalf of private litigants (in a Title VII case), the EEOC is subject to the limitations periods applicable to those litigants). Although there are cases taking a different approach than *Griffin*, recent case law, including those cited in Point II, should render the EEOC subject to the same limitations period applicable to D'Ablemont.

is not so unfettered when it acts primarily in the interest of an individual as it does here.  As demonstrated above the conduct of D'Ablemont and other individuals, including the extent to which they comply with the administrative scheme for asserting an individual claim and seeking individual relief, must be considered in assessing their entitlement to monetary relief.

## V.
## THE EEOC HAS FAILED TO DEMONSTRATE THAT THE EQUITABLE DEFENSES ARE UNAVAILABLE AGAINST THE EEOC  AS A MATTER OF LAW

The EEOC seeks to strike the equitable defenses (waiver, estoppel, laches, and unclean hands) asserted in the Thirteenth Affirmative Defense, contending that equitable defenses cannot be asserted against it when it acts in the public interest and that the facts supporting the defenses are deficient because they all relate to D'Ablemont's conduct and not to the actions of the EEOC. As a preliminary matter, the EEOC cannot establish that the EEOC, or any government agency for that matter, enjoys absolute immunity from the equitable defenses of laches, estoppel, waiver, and unclean hands.  Many courts have denied virtually identical motions to strike brought by Government agencies, including the EEOC.  *See* cases cited *supra* at 7; *see also SEC v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995)(denying SEC's motion to strike estoppel and waiver defenses), *aff'd sub nom.*, *SEC v. First Pac. Bancorp.*, 142 F.3d 1186 (9th Cir. 1998); *Martin v. Nationsbank of Georgia*, N.A., No. 92 Civ. 1474, 1993 WL 345606, at *6-7 (N.D. Ga. Apr. 6, 1993) (defenses of estoppel, unclean hands, and laches were not stricken because "the possibility remains for defendants to employ these [defenses] against the government under certain circumstances").  There is even more reason to allow the defenses in this case where the public interest allegedly served by the EEOC is elusive at best and the EEOC is acting to secure victim specific relief for an individual or individuals.

In *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355 (1977), the Supreme Court made clear that equitable defenses can be asserted in enforcement proceedings commenced by EEOC.  The

18

Supreme Court held:

> This Court has said that when a Title VII defendant is in fact prejudiced by a private plaintiff's unexcused conduct of a particular case, the trial court may restrict or even deny backpay relief. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424-425. The same discretionary power "to locate 'a just result' in light of the circumstances peculiar to the case," *ibid.*, can also be exercised when the EEOC is the plaintiff.

*Id.* at 373. Based upon the holding in *Occidental*, and more recent authority establishing that the EEOC acts in representative capacity on behalf of individuals, the Court must look at the circumstances "peculiar to" the case. To the extent the EEOC purports to seek relief on behalf of D'Ablemont, it can only "locate a just result" by taking into account his actions and inactions in evaluating liability, damages, and if necessary fashioning an individual remedy. The Court must consider whether an individual sat on his rights (D'Ablemont waited 13 years after he began transitioning to Life Partner, and 8 years after he became a Life Partner, to file a Charge of Discrimination), failed to utilize the statutory scheme for seeking relief under the ADEA (only D'Ablemont has ever filed a Charge of discrimination), or is otherwise unworthy of relief due to the conduct of the individual. In this case the Court will also need to assess the impact of the Partnership Agreement itself, and whether D'Ablemont's acquiescence and acceptance of the benefits of the Agreement should bar some or all of the relief sought.

Kelley Drye has set forth numerous facts in support of its equitable defenses in the Thirteenth Affirmative Defense. It asserts that D'Ablemont, through his actions and inactions: i) failed to raise the allegations set forth in the complaint in a timely fashion; b) ratified the provisions of the Kelley Drye Partnership Agreement; c) made representations within Kelley Drye, to third parties, and to governmental authorities that he is a Kelley Drye Partner; d) asserted that Life Partners should not be compensated in the same manner and amounts as other Partners; e) accepted Life Partner Payments, bonus payments, support services, and office space; g) accepted client development allowances; h) accepted payments from third party income sources,

19

while also soliciting and receiving bonuses from the Firm, contrary to the Firm's Partnership Agreement and directive of the Executive Committee; i) failed to answer the Firm's questions as to the precise services provided to, and amounts received from, these third parties; and/or j) accepted the various benefits and complied with the requirements established by the Life Partner provisions of the Kelley Drye Partnership Agreement. Additional facts are set forth in the Fifteenth Affirmative Defense. These facts, and others, provide ample support for the argument that equity (waiver, estoppel, laches, and unclean hands) should either bar or limit recovery on behalf of D'Ablemont. To the extent the EEOC purports to represent any other individual, the conduct of those individuals will be relevant to assessing applicable equitable defenses.

### A.     Waiver

The EEOC has cited no case supporting the proposition that, when it acts in representative capacity on behalf of an individual, the individual's recovery cannot be limited based on waiver. The equitable defense of waiver requires an "intentional relinquishment or abandonment of a known right." *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999), *cert. denied*, 530 U.S. 1244 (2000); *see also Lauder v. First UNUM Life Ins. Co.*, 284 F.3d 375, 381-82 (2d Cir. 2002) (applying waiver in the ERISA context). By agreeing to the terms of the Partnership Agreement containing the Life Partner arrangement and based on many other facts cited in the Thirteenth Affirmative Defense, D'Ablemont and other Life Partners should be deemed to have waived any entitlement to recover damages on account of the allegations in this action.

### B.     Laches

The same conclusion applies to the laches defense. When an individual unreasonably delays the assertion of his rights, the doctrine of laches bars the enforcement of those rights when, to do otherwise, would prejudice the opposing party. *Preston v. Am. Fed'n of Television & Radio Artists,* No. 90 Civ. 7094, 2002 WL 1009458, at *3-4 (S.D.N.Y. May 16, 2002). To prove laches,

"[a] party asserting the defense of laches must establish that: (1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." *Id.* at *3 (citation omitted). "[T]he plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Id.* (*quoting Johnston v. Standard Mining Co.*, 148 U.S. 360, 370 (1893)). "'The existence of laches is a question addressed to the discretion of the trial court' which must consider the 'equities of the parties.'" *Id.* (*quoting Gardner v. Panama R.R. Co.*, 342 U.S. 29, 30-31 (1951)). In exercising its discretion, the trial court "must analyze the reasonableness of the delay and the resulting prejudice." *Stone v. Williams*, 873 F.2d 620, 624 (2d Cir.), *cert. denied*, 493 U.S. 959, *vacated on other grounds*, 891 F.2d 401 (2d Cir. 1989).

D'Ablemont began his transition to Life Partner status 15 years ago. He became a Life Partner ten years ago. Fully cognizant of his rights under the ADEA (D'Ablemont is a labor and employment lawyer) D'Ablemont waited until 2008 to file a Charge of Discrimination. During this entire period Kelley Drye treated him consistent with the terms of the Partnership Agreement. Any damages sought for D'Ablemont should be barred or limited by his decision to sleep on his rights for so long.

### C.    Estoppel

The doctrine of estoppel applies when "the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assoc., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (*cited in Packetport.com*, 2006 WL 2798804, at *4). The arguments detailed above with respect to waiver and laches apply as well to estoppel. The EEOC should be estopped from recovering individual damages for D'Ablemont.

21

### D.     Unclean Hands

As set forth above, and in the Answer, D'Ablemont has engaged in repeated instances of objectionable behavior that is inconsistent with the obligations of a Kelley Drye Partner.  "The 'unclean hands' doctrine closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."  *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 329-330 (1994) (quotation omitted).  Again, Kelley Drye has provided ample facts, both as recited in the Thirteenth Affirmative Defense and the Fifteenth Affirmative Defense to support application of this defense to claims for relief on behalf of D'Ablemont, and possibly others.

## VI.
## THE ALLEGATIONS IN THE FIFTEENTH AFFIRMATIVE DEFENSE ARE RELEVANT AND MATERIAL TO THE CLAIMS AND DEFENSES ASSERTED

The EEOC argues that "most of the Fifteenth Affirmative Defense," (EEOC Br. at 10) which enumerates many of the legitimate non-discriminatory reasons for the Firm's actions, should be stricken, because it contains "redundant, immaterial, impertinent, or scandalous matters." (EEOC Br., at 1 and 10)  In deciding whether to deny a Rule 12(f) motion on these grounds, it has long been settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976); *Gleason v. Chain Serv. Rest.*, 300 F. Supp. 1241 (S.D.N.Y. 1969), *aff'd*, 422 F.2d 342 (2d Cir. 1970); *Fleischer v. A. A. P., Inc.*, 180 F. Supp. 717 (S.D.N.Y. 1959); *Wimberly v. Clark Controller Co.,* 364 F.2d 225 (6th Cir. 1966).

There can be no dispute that the factual averments set forth in the Fifteenth Affirmative Defense are both material and relevant to the claims and defenses asserted.  In its Complaint, the EEOC purports to challenge a "compensation system whereby D'Ablemont and other attorneys who chose to continue work once they reached the age of 70 have been and continue to be

significantly undercompensated for work they performed solely on the basis of their age." (EEOC Br. at 1; *see also* Compl. ¶7b)  In response Kelley Drye has asserted that no such "compensation system" even exists and, *inter alia,* that it had legitimate non-discriminatory reasons for the manner in which D'Ablemont has been compensated, including the fact that he has agreed to the transition to Life Partner in the Partnership Agreement and many other factors set forth in the Fifteenth Affirmative Defense.

These factors are not gratuitously pled "misdeeds," included "to disparage Mr. D'Ablemont in the public eye," as the EEOC erroneously argues (EEOC Br. at 10-11).  Rather, each is relevant to the issue of compensation, as they relate to, for example, additional forms of compensation received by D'Ablemont, his own transfer of billing credit to other Partners and his alleged "contributions" to the Firm,  something that the EEOC itself has put in issue through the allegations of its Complaint (Compl. ¶7(b)).

Specifically, the Fifteenth Affirmative Defense asserts the following: a) shortly after he became a Life Partner, he transferred to other Partners the billing credit for all of his matters and the billing responsibility for most of his matters; b) for certain of the clients he now purports to claim credit for, he does little, if anything, beyond the ministerial act of preparing and sending them a bill; c) during the last five years his billable hours have ranged from 195.4 to 324.2 hours per year, which is an average of 7 to 10 times less, annually, than the hours he billed prior to becoming a Life Partner; d) he has demanded and received tens of thousands of dollars of free legal services from Firm attorneys for himself and his relatives that he was not entitled to, representing that he and/or the relative would pay for these services and then objected to doing so; e) he has demanded and received client development allowances far in excess of what he is entitled to under the formula used for other Partners; f) he has received direct monetary payments

23

from third parties, while also soliciting and receiving a bonus from the Firm, contrary to the

Firm's Partnership Agreement and the directive of the Firm's Executive Committee, g) he has a

history of objectionable behavior inconsistent with the expectations for a Kelley Drye Partner; and

h) the Firm's existing and anticipated level of business.

Every one of the facts set forth in the Affirmative Defenses supports Kelley Drye's

legitimate business reasons for its actions, including the manner in which D'Ablemont was

compensated and/or are relevant to the relief sought by the EEOC.  None of the facts set forth by

Kelley Drye can fairly be characterized as "redundant, immaterial, impertinent, or scandalous."

(EEOC Br. at 1, 10)  The EEOC thus falls far short of its burden on its motion to strike.

## VII.
## AFFIRMATIVE DEFENSES 16, 17 AND 18
## REGARDING DAMAGES SHOULD NOT BE STRICKEN

In the Sixteenth through Eighteenth Affirmative Defenses Kelly Drye asserts that punitive

and compensatory damages are not available in this matter.  The EEOC concedes that there "is a

split in the Circuit Courts of Appeal" that have addressed the issue whether compensatory and

punitive damages can be recovered in a claim alleging retaliation under the ADEA. (EEOC Br. at

12)  The EEOC's admission requires denial of its 12(f) motion.

As noted earlier, a 12(f) motion to strike is not the proper vehicle "for the determination of

disputed and substantial questions of law." *Salcer*, 744 F.2d at 939 (internal citations omitted).

The EEOC position that punitive and emotional distress damages are recoverable rests upon a

Seventh Circuit case, *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 283 (7th Cir. 1993),

which held that "the usual common law damages can be obtained" for retaliation claims under the

FLSA and ADEA.  That position was explicitly rejected by the Eleventh Circuit in *Snapp v.*

*Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir. 2000).  Furthermore, the majority of subsequent

District Court decisions outside of the 7th Circuit involving retaliation claims support the

24

conclusion that punitive and compensatory damages are not available under the ADEA. *See Tomao v. Abbott Labs., Inc.*, No. 04 C 3470, 2007 WL 2225905, at *19 (N.D. Ill. July 13, 2007); *Goico v. Boeing Co.,* 347 F. Supp. 2d 986, 997 (D. Kan. 2004) ("damages for mental distress and punitive damages are not available on claims under the ADEA."); *Johnston v. Davis Sec., Inc.,* 217 F. Supp. 2d 1224, 1232 (D. Utah 2002) (punitive damages not available under ADEA. Given the split in the Circuits and the fact that the Second Circuit has not yet spoken on the issue, the Affirmative Defense is well founded and should not be stricken.

Finally, the EEOC challenges the Seventeenth Affirmative Defense (EEOC's claim seeking recovery of punitive damages is in contravention of defendant's rights under various provisions of the United States' Constitution). The EEOC properly concedes that the Supreme Court recognized the validity of the defense in *BMW of N. Am. v. Gore*, 517 U.S. 559, 568 (1996). Accordingly, the motion to strike this defense should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny the EEOC's Motion to Strike Kelley Drye's Fourth, Ninth, Tenth, Eleventh, Thirteenth, Fifteenth, Sixteenth, Seventeenth and Eighteenth Affirmative Defenses.

Dated: New York, New York  
      May 20, 2010

Respectfully submitted,  
PROSKAUER ROSE LLP  
 s/Bettina B. Plevan  
Bettina B. Plevan  
Joseph C. O'Keefe  
1585 Broadway,  
New York, New York  
Phone: (212) 969-3000  
Fax: (212) 969-2900  
bplevan@proskauer.com  
jokeefe@proskauer.com  
*Attorneys for Defendant*