UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

          Plaintiff,

-v-                                     No. 10 Civ. 655 (LTS)(MHD)

KELLY DRYE & WARREN, LLP,

          Defendant.

-------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 25 JUL 2011

### MEMORANDUM OPINION AND ORDER

      Eugene T. D'Ablemont ("D'Ablemont"), an attorney with the defendant law firm Kelley Drye & Warren, LLP ("Defendant" or "KD"), filed a charge with the federal Equal Employment Opportunity Commission ("Plaintiff" or "EEOC"), alleging that KD's practice under which firm partners' status and terms of compensation changed after age 70 violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 et seq. After investigating the charge, the EEOC commenced this action, alleging Defendant engaged in discriminatory employment practices, including retaliation, in violation of the ADEA rights of D'Ablemont and what the EEOC characterizes as a class of similarly situated employees. The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1337, 1343, and 1345.

      Currently before the Court is the EEOC's Motion to Strike Certain Affirmative Defenses pursuant to Federal Rule of Civil Procedure 12(f). The Court has reviewed thoroughly and considered carefully both parties' submissions. For the following reasons, the EEOC's motion is granted in part and denied in part.

BACKGROUND

The EEOC alleges that, since at least 2001, Defendant has operated under a Partnership Agreement that requires all attorneys subject to the agreement who wish to continue their practice of law beyond 70 years of age to give up any equity interest they have in the Defendant law firm. (Am. Comp. ¶ 7.a.) The Partnership Agreement also requires such attorneys to relinquish their authority to "manage or significantly influence" Defendant. (Id.) The compensation system established by the Partnership Agreement requires that attorneys who reach the age of 70 be compensated thereafter solely on the basis of a discretionary annual bonus payment. (Id.) Under the compensation system established by the Partnership Agreement, D'Ablemont and a class of similarly situated attorneys who continued to practice law beyond the age of 70 were required to relinquish any equity interest they had with Defendant law firm and have received compensation from Defendant in an amount significantly less than that paid to similarly situated, younger attorneys. (Id. ¶ 7.b.)

The EEOC further alleges that, after D'Ablemont filed his ADEA charge with the EEOC, his 2008 annual bonus was reduced from $75,000 to $25,000 in retaliation for his complaining about Defendant's compensation system and his filing of a charge with the EEOC. (Id. ¶ 7.c.) D'Ablemont's annual bonus was reduced despite his "collections and other measures of productivity" having been similar to those of previous years. (Id.) The annual bonus D'Ablemont received in both 2009 and 2010 was again reduced to $25,000 despite his collections and other measures of productivity being similar to years in which he received a $75,000 bonus. (Id.) According to the EEOC, Defendant's employment practices have been, and continue to be, intentional, and were undertaken with malice or reckless indifference to the rights of D'Ablemont and other similarly situated attorneys. (Id. ¶¶ 8, 9.)

In its answer to the EEOC's Amended Complaint, Defendant asserts nineteen affirmative defenses. The EEOC has moved pursuant to Federal Rule of Civil Procedure 12(f) to strike nine of Defendant's affirmative defenses in whole or in part.

## DISCUSSION

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The EEOC moves to strike Defendant's fourth, ninth, tenth, eleventh, thirteenth, sixteenth, seventeenth, and eighteenth affirmative defenses as insufficient as a matter of law. Additionally, the EEOC moves to strike most of Defendant's fifteenth affirmative defense as consisting substantially of "immaterial, impertinent, or scandalous" allegations. The EEOC contends that it would be prejudiced by "expending its limited resources in dealing with discovery, post-discovery motions and trial" as to the challenged affirmative defenses. (Pl.'s Mem. of Law in Supp. of Mot. Under Fed. R. Civ. P. 12(f) to Strike Certain Affirmative Defenses 3.)

Rule 8 of the Federal Rules of Civil Procedure requires that a party responding to a pleading "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). Although no Circuit Court of Appeals has yet spoken to the issue since the Supreme Court's rulings in Twombly and Iqbal concerning pleading standards for claims, most lower courts that have considered the question of the standard applicable to pleading of defenses have held that the Rule 12(b)(6) standard, as elucidated in Twombly and Iqbal, governs the sufficiency of the pleading of affirmative defenses. See, e.g., Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 531 F. Supp. 2d 620, 622-23 (S.D.N.Y. 2008) (recognizing that the equivalent standard governs a motion to dismiss pursuant to Rule 12(b)(6) and a motion to strike an affirmative defense pursuant to Rule 12(f)); Tracy v. NVR, Inc., No. 04 Civ. 6541L, 2009 WL

3153150, *7 (W.D.N.Y. Sept. 30, 2009) (same); Burck v. Mars, Inc., 571 F. Supp. 2d 446, 456 (S.D.N.Y. 2008) (same). It has long been held that affirmative defenses that contain only "bald assertions" without supporting facts should be stricken. Shechter v. Comptroller of City of New York, 79 F.3d 265, 270 (2d Cir. 1996). When reviewing a motion to strike, the court views "the pleading under attack most favorably to the pleader." Wohl v. Blair & Co., 50 F.R.D. 89, 91 (S.D.N.Y. 1970).

Motions to strike affirmative defenses for legal insufficiency are, nonetheless, generally disfavored. Salcer v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984), vacated on other grounds, 471 U.S. 1098 (1986). The Second Circuit has cited approvingly cases holding that a motion to strike should not be used as an opportunity for the determination of disputed, substantial questions of law and has endorsed the view of a leading treatise that "even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits." Salcer, 744 F.2d 935, 939 (2d Cir. 1984) (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure § 1381 at 800-01).

Fourth Affirmative Defense

Defendant's fourth affirmative defense states, in its entirety, that "[t]he EEOC's claims are barred, in whole or in part, by the applicable statutes of limitations and/or filing periods." (Def.'s Answer to Am. Compl. 4.) The EEOC moves to strike this defense, asserting that it is not bound by the statutory limitations periods and administrative filing requirements that apply to private litigants. Citing a single district court decision to the contrary, KD argues that this legal issue is sufficiently unsettled that the motion to strike should be denied.

The Civil Rights Act of 1991 removed language in the ADEA which had incorporated by reference the time limitations applicable to claims under the Fair Labor Standards Act ("FLSA"). In the place of the excised reference to the FLSA, Congress created a requirement that private individuals file suit no later than 90 days after the receipt of a right-to-sue letter from the EEOC. See 29 U.S.C.A. § 626(e) (West 2008). It is thus clear that the amended language of ADEA § 626(e) imposes no temporal limitations on the EEOC's initiation of a suit.

Defendant's underlying conduct at issue, and the commencement of suit, occurred long after the 1991 revisions to the procedure and substance of the ADEA. Therefore, no statute of limitations restricts the EEOC's prosecuting this ADEA action. See, e.g., EEOC v. Inc. Vill. of Valley Stream, 535 F. Supp. 2d 323, 325-26 (E.D.N.Y. 2008) (no statute of limitation applicable to EEOC's ADEA suit); EEOC v. Venator Group, Specialty, Inc., No. 09 Civ. 4758 (AGS), 2002 WL 181709, *2 (S.D.N.Y. Feb. 5, 2002) (same); Littel v. Aid Ass'n for Lutherans, 62 F.3d 257, 258-59 (8th Cir. 1995) (same); EEOC v. Tire Kingdom, Inc., 80 F.3d 449, 451 n.1 (11th Cir. 1996) (same). The EEOC's motion to strike Defendant's fourth affirmative defense will, accordingly, be granted.

Ninth, Tenth, and Eleventh Affirmative Defenses

Defendant's ninth affirmative defense states, in its entirety, that "[t]he claims contained in the Complaint are barred as to any matters not contained in the administrative charges of discrimination." (Def.'s Answer to Am. Compl. 4.) The Court reads the reference to "administrative charges" as relating to the charge filed by D'Ablemont with the EEOC.

The content of an individual complainant's charge does not limit the scope of a lawsuit brought by the EEOC in an enforcement capacity. EEOC v. Johnson & Higgins, Inc., 91

F.3d 1529, 1536-37 (2d Cir. 1996) (EEOC's authority to combat age discrimination is independent of the filing of a charge); EEOC v. Sidley Austin LLP, 437 F.3d 695, 696 (7th Cir. 2006) (EEOC's enforcement authority is "not derivative of the legal rights of individuals even when it is seeking to make them whole"). The provision of pre-suit notice to the employer of the basis of the charges in time to permit the required conciliation efforts is sufficient. See 29 U.S.C.A. § 626(b) (West 2008); EEOC v. Thomas Dodge Corp. of N.Y., 524 F. Supp. 2d 227, 235 (E.D.N.Y. 2007). Such notice was provided in the instant action through D'Ablemont's February 29, 2008, charge (Burstein Decl. Ex. A) and the EEOC's March 20, 2009, Letter of Determination which notified Defendant of the EEOC's claims arising out of the terms and compensation of D'Ablemont and other Life Partners (id. Ex. B). The EEOC's motion to strike Defendant's ninth affirmative defense due to legal insufficiency will, therefore, be granted.

Defendant's tenth affirmative defense states that Plaintiff's claims "are barred, in whole or in part, by the failure of the EEOC and D'Ablemont to satisfy the statutory and/or administrative prerequisite to the bringing of an action under the ADEA." (Def.'s Answer to Am. Compl. 5.) Defendant's eleventh affirmative defense states that Plaintiff's claims "allegedly asserted on behalf of individual(s) other than D'Ablemont are barred, in whole or in part, because no administrative charges were filed relating thereto." (Id.) As noted above, the EEOC may pursue claims on behalf of individuals other than D'Ablemont since "[a]ny violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." Gen Tel. Co. v. EEOC, 446 U.S. 318, 331 (1980). The EEOC's enforcement authority is not limited to the scope of an individual's charge. Furthermore, KD has neither plead nor proffered any facts indicating that the EEOC has failed to comply with any of the administrative prerequisites to commencement of an enforcement suit.

See 29 C.F.R. §§ 1626.15(b), (d) (2010). See also Thomas Dodge, 524 F. Supp. 2d at 236 (the doctrine that any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint applies "to additional victims who are uncovered during such investigation"); 29 C.F.R. § 1626.13 (2010) (because EEOC has "independent investigative authority" it "may continue any investigation and may secure relief for all affected persons notwithstanding a request by a charging party to withdraw a charge."); EEOC v. Waffle House, Inc., 534 U.S. 279, 291 (2002); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991). For these reasons, the EEOC's motion to strike Defendant's tenth and eleventh affirmative defenses as lacking legal sufficiency will be granted.

Thirteenth and Fifteenth Affirmative Defenses

    Defendant's thirteenth affirmative defense states that the EEOC's claims are "barred, in whole or in part, by the doctrines of waiver, estoppel, laches, and unclean hands" due to various actions and/or inactions by the EEOC and/or D'Ablemont. (Def.'s Answer to Am. Compl. 5-6.) Defendant's fifteenth affirmative defense argues that "D'Ablemont's compensation as a Life Partner has been entirely non-discriminatory, non-retaliatory and fair" in light of numerous aspects and circumstances of D'Ablemont's employment and Defendant's business conditions. (Id. 6.)

    As explained above, the EEOC is not in privity with D'Ablemont even though it seeks relief on his behalf. However, this does not mean that D'Ablemont's actions have no bearing on the EEOC's ability to recover in this action. See Waffle House, 534 U.S. at 297 (noting that an employee's conduct may affect the EEOC's recovery without rendering the EEOC's claim merely derivative of that of the employee); Sidley Austin, 437 F.3d at 696. The EEOC seeks injunctive relief, compensatory damages, punitive damages, and costs. The

monetary component of the remedies sought may depend on D'Ablemont's conduct (particularly if D'Ablemont remains the EEOC's only Life Partner for whom the EEOC seeks victim-specific relief). The potential relevance of D'Ablemont's conduct derives not from privity between D'Ablemont and the EEOC, but from traditional equitable considerations that prevent, for instance, double recovery for any specific plaintiff, no matter whether their relief is obtained through suit by the EEOC or through private litigation. See Waffle House, 534 U.S. at 296-97. Affirmative defenses thirteen and fifteen contain numerous details and particular statements about D'Ablemont's employment conduct on which these defenses are based. Rule 8's pleading requirement is satisfied by these factual allegations. The allegations contained in the fifteenth affirmative defense are not so "immaterial, impertinent, or scandalous" so as to justify their being stricken from Defendant's Answer. The potential relevance of D'Ablemont's actions to the victim-specific relief the EEOC seeks is clear. The EEOC's motion will, therefore, be denied to the extent that affirmative defenses thirteen and fifteen are relevant to any damages claims asserted with respect to D'Ablemont.

Sixteenth and Eighteenth Affirmative Defenses

The EEOC moves to strike Defendant's sixteenth affirmative defense to the extent KD asserts that punitive damages are unavailable "under the statutes that allegedly give rise to the claims asserted by the EEOC."[1] (Def.'s Answer to Am. Compl. 7.) Defendant's eighteenth affirmative defense states that "[t]he EEOC cannot recover compensation for alleged 'non-pecuniary losses' because any such losses are not compensable under the statutes which allegedly give rise to the claims asserted by the EEOC." (Id.)

---

[1] (See Pl.'s Mem. of Law in Supp. of Mot. Under Fed. R. Civ. P. 12(f) to Strike Certain Affirmative Defenses 12 n.5.)

Circuit Courts of Appeal have reached different conclusions as to the availability of compensatory and punitive damages under the ADEA. Compare, e.g., Travis v. Gary Cmty. Mental Health Ctr., Inc., 921 F.2d 108, 112 (7th Cir. 1990) (punitive and compensatory damages available under FLSA) with Snapp v. Unlimited Concepts, Inc., 208 F.3d 928, 934-37 (11th Cir. 2000) (FLSA, the remedial scheme of which the ADEA incorporates by reference, does not permit punitive and compensatory damages). Although at least one court in this district has determined that such damages are available under the ADEA, Sines v. Service Corp. Int'l, No. 03 Civ. 5465 (SC), 2006 WL 3247663, at *2-3 (S.D.N.Y. Nov. 8, 2006), there is no binding authority from the Court of Appeals for the Second Circuit on this issue of law.

In light of the unsettled state of the law on these contentions and the disfavored status of Rule 12(f) motions as vehicles for deciding disputed issues of law, it is inappropriate for the Court to address these issues of law at this stage of the proceedings. See Salcer, 744 F.2d at 939 ("a motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law. . . . This is particularly so when [] there has been no significant discovery. Even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits. To do otherwise would be to run the risk of offering an advisory opinion on an abstract and hypothetical set of facts.") (quotations and citations omitted). The EEOC's motion to strike the sixteenth and eighteenth affirmative defenses will, accordingly, be denied.

Seventeenth Affirmative Defense

Defendant's seventeenth affirmative defense asserts that the EEOC's claim seeking recovery of punitive damages violates Defendant's rights under various federal and state

constitutional provisions. This defense is too conclusory to provide fair notice to the EEOC of the grounds on which it rests. Defendant merely provides a laundry list of federal constitutional provisions, and "the corresponding state constitutional provisions," that the pursuit of punitive damages is asserted to violate. Defendant's list, without factual elucidation, fails to meet the fair notice Twombly pleading standard. The EEOC's motion is therefore granted as to the seventeenth affirmative defense.

## CONCLUSION

For the foregoing reasons, the EEOC's motion to strike certain affirmative defenses is granted as to Defendant's fourth, ninth, tenth, eleventh, and seventeenth defenses, and is denied as to Defendant's thirteenth, fifteenth, sixteenth, and eighteenth defenses.

This memorandum opinion and order resolves docket entry no. 10.

SO ORDERED.

Dated: New York, New York
July 25, 2011

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge