UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

  -v-

KELLEY DRYE & WARREN, LLP,

        Defendant.

------------------------------------------------------x



No.  10 Civ. 655 (LTS)(MHD)

### MEMORANDUM ORDER

        Plaintiff Equal Employment Opportunity Commission (the "EEOC") brings this action against Kelley Drye & Warren, LLP ("Defendant" or "KD"), pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.  The EEOC alleges, inter alia, that KD has significantly undercompensated charging party Eugene T. D'Ablemont ("D'Ablemont") and a class of similarly situated employees solely on the basis of their age.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1337, 1343, and 1345.  The EEOC has moved for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 dismissing KD's nineteenth affirmative defense.  The Court has considered thoroughly the parties' submissions and, for the following reasons, the EEOC's motion is granted in part and denied in part.

BACKGROUND

The following facts are undisputed except as otherwise indicated.[1]  D'Ablemont

filed an age discrimination charge with the EEOC on February 29, 2008.  (Pl.'s 56.1 St. ¶ 11.)

D'Ablemont held equity partner status at KD until 2000, the year in which D'Ablemont turned

70 years of age and entered into Life Partner status in accordance with KD's Partnership

Agreement.  (Id. ¶ 4; see also Decl. of Eugene T. D'Ablemont ("D'Ablemont Decl."), Ex. A

("Partnership Agreement") § 501(a).)

The EEOC alleges that KD's compensation system unlawfully discriminates

against D'Ablemont and other attorneys who continue to practice at KD after reaching the age of

70 by undercompensating them solely on the basis of age.  KD's nineteenth affirmative defense

seeks a setoff of any damages to which D'Ablemont may be entitled based on payments to him

by third parties, allegedly excessive client development funds provided to him during the

relevant period, and the value of certain legal services D'Ablemont received from the firm.[2]  KD

---

[1]      Facts recited as undisputed are identified as such in the parties' statements
pursuant to Local Civil Rule 56.1 or drawn from evidence as to which there is no
non-conclusory contrary factual proffer.  Citations to the parties' respective
S.D.N.Y. Local Civil Rule 56.1 statements ("Pl.'s 56.1 St.") and responses thereto
("Def.'s 56.1 St.") incorporate by reference citations to the underlying evidentiary
submissions.

[2]      Defendant's nineteenth affirmative defense asserts:

> To the extent D'Ablemont is successful in recovering any damages,
> Kelley Drye is entitled to a setoff of, inter alia, the total amounts
> D'Ablemont has received from third parties for legal services he has
> provided to those third parties, as well as amounts D'Ablemont has
> received from the Firm, or owes the Firm, and all debts of D'Ablemont
> forgiven by the Firm.

(Pl.'s 56.1 St. ¶ 1.)

asserts that these sums constitute forms of compensation that D'Ablemont received during the period of alleged discrimination.

Third-Party Retainer Agreements

In a letter dated February 1, 2000, a long-standing firm client for which D'Ablemont had been lead counsel offered to enter a third-party retainer agreement whereby D'Ablemont would remain as lead counsel and receive payments directly from the client. Another long-standing firm client for which D'Ablemont had been lead counsel made a similar offer in a letter dated March 15, 2000. D'Ablemont entered into the proposed retainer agreements with the two clients in 2000 and alleges that he notified fully KD about these arrangements.

D'Ablemont received payments from the clients, as well as bonus or "honorarium" payments from KD, at all relevant times, and alleges that the receipt of such client payments and KD payments was approved by KD representatives. Defendant maintains that D'Ablemont's retainer arrangements with the third parties were not approved by KD, and that KD policy precluded the receipt of Life Partner annual bonus payments by persons who were also receiving direct payments from KD clients. Defendant also proffers evidence that, under the KD's Partnership Agreement, such payments are to be considered the property of KD and are included in revenue calculations that are relevant to partner compensation.

Client Development Allowance

KD provides its partners with client development allowances for the purpose of promoting business development with existing and prospective clients and paying certain other business-related expenses. (Decl. of Thomas Carty ("Carty Decl.") ¶ 4; D'Ablemont Reply Decl., Ex. 5 ("Client Development Allowances Policy") ¶ 1.) According to KD Executive

Director Thomas Carty ("Carty"), D'Ablemont's total client development allowance has been far

in excess of the amount normally given to partners based on a formula, and KD made the

allegedly excessive payments to D'Ablemont in response to requests by D'Ablemont.  (Id. ¶ 5.)

KD argues that it should be entitled to offset any damages award D'Ablemont may receive with

the allegedly excessive funds that it gave D'Ablemont as client development allowances.

Write-offs of Legal Services

KD also seeks to set off the value of certain legal services that D'Ablemont

received from the firm as setoff.  In 2007, D'Ablemont assisted his son in pursuing a legal

malpractice claim against a firm he had hired to represent his son in a real estate matter.

D'Ablemont appeared pro se until trial, when he engaged the services of another partner at KD.

(Def.'s 56.1 St. ¶ 13.)  The fees for the legal services were written off by KD in June 2007, and

D'Ablemont was never billed for the work.  (Pl.'s 56.1 St. ¶ 13).  D'Ablemont also used KD's

legal services for assistance with a patent application.  (Id. ¶ 14.)  As evidenced by a letter dated

July 18, 2008, D'Ablemont was granted a write-off of those fees as well.  (D'Ablemont Decl.,

Ex. L; Callagy Decl., Ex. I.)  KD argues that the value of the legal services it provided to

D'Ablemont should be offset against any future damages award, as it was neither KD policy nor

standard practice that D'Ablemont or any KD partner be entitled to receive for free services of

the type provided to D'Ablemont and his family members.  (Callagy Decl. ¶¶ 11-12; Callagy

Decl., Ex. E.)

DISCUSSION

Summary judgment as to a particular claim is appropriate where "the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 256 (1986). Material facts are those that "'might affect the outcome of the suit under governing law'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 277 U.S. at 248). The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. Rubens v. Mason, 527 F.3d 252, 255 (2d Cir. 2008) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Even when seeking victim-specific relief, when the EEOC pursues a claim it fulfills a dual role of vindicating a public interest and providing make-whole relief for the victim. EEOC v. Waffle House, 534 U.S. 279, 296 (2002). Make-whole relief "requires that victims of discrimination be 'restored to the economic position they would have occupied but for the intervening unlawful conduct of employers.'" Munnelly v. Memorial Sloan Kettering Cancer Center, 741 F. Supp. 60, 62 (S.D.N.Y. 1990) (quoting Rodriguez v. Taylor, 569 F.2d 1231, 1238 (3rd Cir. 1977)).

A victim's conduct, such as failure to mitigate damages or acceptance of a settlement, may limit the recovery that the EEOC can obtain in court. Waffle House, 534 U.S. at 296; see, e.g., Munnelly, 741 F. Supp. at 62-63 (allowing employer to use as setoff the severance pay former employee continued to receive after finding new employment); Meschino v. International Tel. & Tel. Corp., 661 F. Supp. 254, 257 (S.D.N.Y. 1987) (allowing employer to deduct pension benefits the former employee received during the back pay period). Therefore, a victim's efforts to mitigate damages through "interim earnings 'or amounts earnable with reasonable diligence'" must also reduce any recovery. Bonura v. Chase Manhattan Bank, N.A., 629 F. Supp. 353, 355 (S.D.N.Y. 1986) (quoting 42 U.S.C. § 2000e-5(g)). The defendant has the

burden of proving any amount that must be deducted from damages. <u>Sims v. Mme. Paulette Dry Cleaners</u>, 638 F. Supp. 224, 231 (S.D.N.Y. 1986). The EEOC argues that it is entitled to judgment dismissing Defendant's nineteenth affirmative defense because none of the types of payments for which Defendant seeks setoff is in the nature of compensation relevant to any claim for damages that the EEOC will assert in this case.

<u>Third-Party Retainer Agreements</u>

The EEOC asserts in its reply brief that it will not make any damages claims premised on work that D'Ablemont performed pursuant to the third-party agreements, and argues that such payments thus are irrelevant to damages calculations and that KD's setoff claim in this regard should be dismissed. In the absence of any detailed damages claim by the EEOC, and in light of factual disputes concerning the approval of the arrangements, the relationship between the payments and bonus compensation arrangements, KD's normal treatment of third-party payments in connection with partner compensation, and similar matters, the EEOC has failed to sustain its burden of demonstrating that it is entitled to judgment in its favor at this juncture. The motion will, accordingly, be denied insofar as the EEOC seeks dismissal of the affirmative defense as it relates to third-party payments.

<u>Client Development Allowance</u>

The EEOC's motion will, however, be granted insofar as it seeks dismissal of the affirmative defense as it relates to allegedly excessive client development funds. The undisputed record indicates that KD voluntarily paid the allegedly excessive funds at D'Ablemont's request, as a category of business expense provision that KD does not treat as compensatory. The record, viewed in the light most favorable to KD as the non-moving party, provides no basis upon which a rational fact finder could conclude that allegedly excessive client development amounts should

properly be set off from a damage award as compensatory payments.

Write-offs of Legal Services

Similarly, the EEOC's motion will be granted insofar as the affirmative defense seeks offset of the written-off legal expenses. KD has proffered no evidence from which a rational fact finder could conclude that the write-offs were compensatory transactions.

CONCLUSION

For the foregoing reasons, the EEOC's motion for partial summary judgment dismissing KD's nineteenth affirmative defense is granted insofar as the defense relates to D'Ablemont's client development funds and write-offs of legal services, and denied insofar as it relates to the payments D'Ablemont received pursuant to third-party retainer agreements with KD clients.

This memorandum order resolves docket entry no. 38.


SO ORDERED.


Dated: New York, New York
       July 25, 2011

LAURA TAYLOR SWAIN
United States District Judge